John P. Cogger (State Bar No. 172808)
jcogger@grsm.com
Joshua D. Wilson (*Pro Hac Vice* to be filed)
jwilson@grsm.com
**GORDON REES SCULLY MANSUKHANI, LLP**
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile:  (213) 680-4470

Attorneys for Respondent
SPOKEN GIANTS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANDORA MEDIA, LLC, a limited liability company, | Case No.: 2:23-mc-00149-MCS-MAR |
| Petitioner, | **SPOKEN GIANTS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PANDORA'S MOTION TO COMPEL SG, LLC TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA** |
| vs. | |
| SPOKEN GIANTS, LLC, a limited liability company, | |
| Respondent. | **Hon. Mark C. Scarsi, Presiding**<br>**Hon. Margo A. Rocconi, Referral** |

COMES NOW, Spoken Giants, LLC, by and through its attorneys Gordon Rees Scully Mansukhani, LLP, and hereby submits this Memorandum of Law in Opposition to Petitioner Pandora Media, LLC's motion for an order directing Spoken Giant, LLC's compliance with Pandora Media, LLC's subpoena *duces tecum*. Spoken Giants, LLC submits this Memorandum of Points, the Declaration of Travis Dearman, and ancillary documents in support of this opposition response.

///

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

1

**TABLE OF CONTENTS**

2

**I.      INTRODUCTION** .................................................................................... 5

**II.     FACTUAL AND PROCEDURAL BACKGROUND** ................................. 6

    **A.     Factual Background** ...................................................................... 6

    **B.     Procedural Background** ................................................................. 8

**III.    LEGAL STANDARD** ............................................................................... 9

**IV.     ARGUMENT** ......................................................................................... 11

    **A.     Pandora's Requests are Unduly Broad and Burdensome** ............... 12

    **B.     SG Has No Documents Relevant to Pandora's Copyright Misuse
    Defense** ...................................................................................... 13

    **C.     Pandora's Motion is a Continuation of Its Scorched Earth Litigation
    Tactics Designed to Punish Comedians for Asserting Their Rights and
    Drive SG Out of Business** ............................................................ 16

    **D.     If the Court Compels Non-Party SG to Produce Documents, Then
    Pandora Must Pay for SG's Significant Expenses** .......................... 16

**V.      CONCLUSION** ...................................................................................... 17

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PANDORA'S MOTION
TO COMPEL SG, LLC TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA

1

## TABLE OF AUTHORITIES

2

**Caselaw Authority**

3
*Alcon Vision, LLC v. Allied Vision Grp., Inc.*,
2019 U.S. Dist. LEXIS 152073 (S.D.N.Y. Sept. 6, 2019) .................................... 10, 13

4
*Apple Inc. v. Psystar Corp.*,
5
658 F.3d 1150 (9th Cir. 2011) ................................................................. 13

6
*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F. Supp. 1522 (S.D.N.Y. 1991) ......................................................... 15

7
*Call of the Wild Movie, LLC v. Does 1-1,062*,
8
770 F. Supp.2d 332 (D.D.C. 2011) ........................................................... 10

9
*Davis v. Ramen*,
2010 WL 1948560, 2010 U.S. Dist. LEXIS 115432, at *3 (E.D.Cal. May 11, 2010) ...... 10

10
*In Re Subpoena of DJO, LLC*,
11
295 F.R.D. 494 (S.D. Cal. 2014) ............................................................. 11

12
*Insituform Technologies v. Cat Contracting*,
914 F.Supp. 286, 287 (N.D. Ill. 1996) ....................................................... 10

13
*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
14
2018 U.S. Dist. LEXIS 106727 (S.D.N.Y. April 25, 2018) ................................. 15

15
*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013) ................................................................. 17

16
*Linder v. Calero-Portocarrero*,
17
251 F.3d 178 (D.C. Cir. 2001) ................................................................ 17

18
*M. Witmark & Sons v. Jenson*,
80 F. Supp. 843 (D. Minn. 1948) ....................................................... 15, 16

19
*Moon v. SCP Pool Corp.*,
20
232 F.R.D. 633 (C.D. Cal. 2005) ............................................................. 10

21
*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007) ............................................................. 11

22
*Omega S.A. v. Costco Wholesale Corp.*,
23
776 F.3d 692 (9th Cir. 2015) ................................................................. 14

24
*RG Abrams Ins. v. Law Offs. of C.R. Abrams*,
No. 2:21-cv- 00194-FLA-MAAx, U.S. Dist. LEXIS 253216 (C.D. Cal. Dec. 22, 2021) ...... 9

25
*Royal Surplus Lines Ins. Co. v. Sofamor Danek Group*,
26
190 F.R.D. 463 (W.D. Tenn. 1999) ........................................................... 11

27
*Shloss v. Sweeney*,
28
515 F. Supp. 2d 1068 (N.D. Cal. 2007) ..................................................... 14

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PANDORA'S MOTION
TO COMPEL SG, LLC TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA

*UMG Recordings, Inc. v. Lindor*,
531 F. Supp. 2d 453 (E.D.N.Y. 2007) ................................................................ 15

*United States v. McGraw-Hill Cos.*,
Case No.: CV 13-0779-DOC (JCGx), 302 F.R.D. 532 (C.D. Cal. Aug. 1, 2014) ........................ 17

*Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*,
342 F.3d 191 (3d Cir. 2003) ............................................................................... 14

*Wahoo Intern. Inc. v. Phix Doctor, Inc.*
2014 WL 3573400 (S.D. Cal. July 18, 2014) ...................................................... 11

*W. Palm Beach Acquisitions, Inc. v. KIA Motors Am., Inc.*,
2021 U.S. Dist. LEXIS 241609 (C.D. Cal. 2021) ................................................. 11

*Wixen Music Publ'g, Inc. v. Triller, Inc.*,
2022 WL 3636000 (C.D. Cal. Aug. 1, 2022) ........................................................ 15

**Other Authority**

Fed. R. Civ. P. 26(b)(2) ....................................................................................... 11

Fed. R. Civ. P. 26(b)(2)(C) ................................................................................. 10

Fed.R.Civ.P. 45(d)(2)(B)(ii) ........................................................................ 16, 17

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

-4-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

## I.   INTRODUCTION

Respondent Spoken Giants, LLC ("SG") respectfully submits this Memorandum of Law in opposition to Petitioner Pandora Media, LLC's ("Pandora") motion (the "Motion") for an order directing SG's compliance with Pandora's subpoena *duces tecum* (the "Subpoena"). This opposition is based on the following:  (1) Pandora's Subpoena is facially overly broad and unduly burdensome, especially when served on *non-party* SG, and any relevant documents that may be in SG's possession are also in the possession of the Plaintiffs in the series of consolidated copyright infringement cases in the Central District of California, *In re Pandora Media, LLC Copyright Litigation,* Master File No. 2:22-cv-00809-MCS-MAR (C.D. Cal. Filed February 7, 2022), (the "Consolidated Litigation"); (2) SG has no documents relevant to Pandora's alleged affirmative defense of copyright misuse, which applies solely to actions of the copyright owner-plaintiffs in the Consolidated Litigation and not the actions of third parties such as SG; and (3) Pandora's history of using its vast resources to weaponize the Consolidated Litigation and thwart the efforts of comedians to enforce their legitimate copyright rights. Based on the foregoing, it is respectfully submitted that Pandora's Motion should be denied. If the Court decides to grant Pandora's Motion, SG requests that this Court narrowly tailor the scope of the requests, and, that Pandora financially compensate SG for the significant expenses it will incur in such production resulting from compliance.

The Consolidated Litigation involves copyright infringement claims brought by nine comedian plaintiffs[1] (the "Plaintiffs") arising from Pandora's willful infringement of the Plaintiffs' copyrights in certain comedic literary works (*e.g*., comedic routines and/or"jokes") embodied in comedy sound recordings (the "Asserted Works"). Pandora has been exploiting the Asserted Works on its service without a license from the Plaintiffs for more than a decade. Pandora has refused to even negotiate with SG (or with Word Collections, a separate company that offers licenses to digital services such as Pandora on behalf of Word Collections' member-comedians) over the terms of a license to cover its infringing use of comedians' copyrighted

---

[1] Seven of the nine comedians were members of Word Collections. Mr. Black, the eighth comedian, filed his complaint in July, 2022, just before, according to his interrogatory response, he withdrew from SG the right to license his literary works. Plaintiff Lopez, the ninth comedian, is not a member of either Word Collections or SG.

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

1    literary works. Subsequently, the Plaintiffs filed lawsuits in the Central District of California,

2    which became the Consolidated Litigation. The claims of these nine comedians are theirs and

3    theirs alone and Pandora's stated defenses (including copyright misuse) rely solely on the actions

4    of the Plaintiffs.

5          SG is not a plaintiff in the Consolidated Litigation and does not own the copyrights in the

6    Asserted Works. The **only** connection that SG has to the Consolidated Litigation is that Plaintiff

7    Lewis Black **was** a member of SG for a short period of time.[2] The actions of SG, its business

8    operations, finances, roster of comedians, communications with comedians, members or other

9    third parties, or anything related to potential investments in SG have nothing to do with

10   Pandora's purported defenses. Moreover, to the extent that any of Pandora's requests are deemed

11   relevant to the claims or defenses in the Consolidated Action (e.g., SG's communications with

12   any Plaintiff), such responsive documents would be in the possession of Plaintiffs and should be

13   sought from them rather than SG.

14         Notwithstanding SG's status as a non-party to the Consolidated Litigation—having *twice*

15   obtained dismissal of Pandora's meritless antitrust counterclaims (as discussed, *infra*)—and

16   neither SG nor any of its members are Plaintiffs in the Consolidated Litigation, Pandora

17   continues to seek through this improper Motion the production of documents which are entirely

18   irrelevant to the Consolidated Litigation and which will place an enormous and undue financial

19   and logistical burden on SG, a non-party. Pandora attempts to treat SG as if it is still a party and

20   as if its dismissed counterclaims are still at issue in the Consolidated Litigation. Through its

21   overbroad fishing expedition Pandora seeks to delve into SG's business model and plans,

22   financial information, and other areas of business endeavors, all of which have absolutely

23   nothing to do with Plaintiffs, the Asserted Works, or any of Pandora's asserted defenses.

24

25

26

27   ///

28
___
[2] As Plaintiff Lewis Black's response to Pandora's interrogatories makes clear, Mr. Black has not been a member of SG for more than a year. (Ex. F at 6).

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Background

For more than a decade, Pandora has made sound recordings of comedy performances - in which the underlying comedic literary works are embedded - available to its listeners through its (initially) non-interactive and (more recently) interactive digital audio service. Although Pandora currently claims it has "always secured the licenses necessary to stream spoken-word comedy," (ECF 2, at 3), that claim differs from its prior public statements. For example, Pandora has repeatedly admitted in its public filings with the Securities and Exchange Commission that it performs these underlying comedic literary works without any license and that it has never obtained a license for the underlying comedic literary works that it streams.[3] Pandora acknowledged that, based on its unlicensed use of comedic literary works, it "**could be subject to significant liability for copyright infringement**."[4]

Given its public admission of liability, it is reasonable to expect Pandora obtain the necessary licenses to stream comedy content. Instead, Pandora has engaged in scorched earth litigation, bringing meritless claims against SG (and Word Collections) in a futile attempt to avoid responsibility for its past infringements, or, failing that, using the costs of litigation to drive SG out of business. Pandora's Motion is simply a continuation of its ongoing abusive litigation tactics. Under the guise of seeking information related to its claims of "copyright misuse," Pandora's Motion attempts to resurrect discovery previously levied at SG when it was a Counter-Defendant. However, copyright misuse is an affirmative defense related to *Plaintiffs'*

---

[3] *See, e.g.*, Pandora's 2017 10k at 18 listing the following "Risk Factor," which Pandora states "could adversely affect our business, financial condition, results of operations and the trading price of our common stock."

> ***We are not able to obtain licenses for the underlying literary works for the sound recordings of spoken-word comedy content that we stream. Third parties could assert copyright claims against us as a result.***
>
> We stream spoken word comedy content, for which the underlying literary works are not currently entitled to eligibility for licensing by any performing rights organization in the United States. Rather, pursuant to industry-wide custom and practice, this content is performed absent a specific license from any such performing rights organization or individual rights owners, although content acquisition costs are paid to SoundExchange for the public performance of the sound recordings in which such literary works are embodied. There can be no assurance that this industry custom will not change or that we will not otherwise become subject to additional licensing costs for spoken word comedy content imposed by performing rights organizations or individual copyright owners in the future or be subject to claims of copyright infringement.

[4] Pandora 2015 10K at 13 (emphasis added).

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PANDORA'S MOTION TO COMPEL SG, LLC TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

1   conduct, not those of unrelated third-parties. SG's conduct has already been found to be non-

2   actionable and Pandora's claims against SG were already dismissed with prejudice. Through its

3   third-party subpoena, Pandora seeks to compel SG to produce a trove of documents related to its

4   business practices, business model, financial and investor information, and other confidential

5   information, none of which has anything to do with Plaintiffs, the Asserted Works or Pandora's

6   alleged defenses.

7         Pandora's Motion should be denied because the discovery requests are entirely irrelevant

8   to the Plaintiffs' claims in Consolidated Litigation and to Pandora's alleged defenses. To the

9   extent that such discovery requests are relevant, they are unduly burdensome and more

10  appropriately sought from parties to the litigation rather than from non-party SG.

11        **B.        Procedural Background**

12        Pandora initially filed counterclaims for price fixing, tying, attempted monopolization

13  and monopolization, and conspiracy to monopolize against Word Collections and certain

14  Plaintiffs (Consolidated Litigation, ECF 34, Filed 05/05/22).[5] Pandora subsequently filed the

15  same four counterclaims against SG (and Plaintiff Lewis Black). (Consolidated Litigation, ECF

16  72, Filed 09/26/22). On October 26, 2022, this Court dismissed Pandora's initial counterclaims

17  against Word Collections and those Plaintiffs. (Consolidated Litigation, ECF 83, Filed 10/26/22).

18  While giving Pandora the right to amend its pleadings on the price fixing and tying claims, this

19  Court raised "doubts whether Pandora can allege the necessary facts at this stage." *Id.* at 27. The

20  Court noted "that discovery may yield information about the nature of the agreements between

21  the comedians and Word Collections, at the very least in the context of Pandora's copyright

22  misuse defense. (Answer, First Defense.)." *Id.*

23        Pandora could have heeded the Court's advice and conducted discovery in an effort to

24  elicit evidence to support its counterclaims. Instead, on November 18, 2022, Pandora elected to

25  file amended (though nearly identical) counterclaims, alleging price fixing, agreements in

26  unreasonable restraint of trade, attempted monopolization and monopolization, and conspiracy to

27

28  _____
    [5] The Plaintiffs named were the seven comedians (or their estates) who had sued Pandora for copyright
    infringement, including the Bill Engvall estate, the George Carlin estate, the Robin Williams estate, the Bill Hicks
    estate, Ron White, Andrew Clay Silverstein, and Nick Di Paolo.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PANDORA'S MOTION
TO COMPEL SG, LLC TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

monopolize. (Consolidated Litigation, ECF 93, Filed 11/18/22). The Court again dismissed Pandora's counterclaims, but this time "the Amended Counterclaims are dismissed in their entirety without leave to amend." (Consolidated Litigation, ECF, 164).

Prior to the Court's dismissal of Pandora's counterclaims, Spoken Giants was a counterclaim defendant. Specifically, Pandora filed counterclaims alleging that Spoken Giants violated Sections 1 and 2 of the Sherman Act. (Decl. T. DeArman, ¶ 9) Pandora served written discovery on SG, including requests for production of documents and interrogatories. SG objected on numerous grounds and the parties engaged in discussions over the scope of Pandora's discovery demands. As noted, Pandora requested 515 proposed search terms or phrases. SG attempted to reduce the scope of Pandora's request. On April 5, 2023, the Court dismissed all of Pandora's counterclaims against SG *with prejudice*. This Order resolved all claims involving SG. (Decl. T. DeArman, ¶ 11-12)

On April 23, 2023, more than three weeks after SG's dismissal, Pandora alleges it served a third-party subpoena on SG. However, SG did not serve counsel but sent the third-party subpoena directly to SG. *Id*. at ¶ 15. Upon receipt, SG served objections and responses to the non-party subpoena. (Decl. T. DeArman, ¶ 17). SG objected to the breadth of the requests and requested the costs of production be covered due to the massive scope of Pandora's requests. As discussed *infra*, Pandora's requests are unduly broad, overly burdensome, and obtainable through other less burdensome means. On October 12, 2023, Pandora filed the instant motion.

**III.    LEGAL STANDARD**

As the moving party in this motion to compel, Pandora bears the burden of establishing how the discovery sought is relevant. *RG Abrams Ins. v. Law Offs. of C.R. Abrams,* No. 2:21-cv-00194-FLA-MAAx, U.S. Dist. LEXIS 253216, 2021 WL 10312431, *22 (C.D. Cal. Dec. 22, 2021). In determining relevance, the information sought must relate to the claims or defenses *at issue in the case*. Further, if relevant, discovery should be limited where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive…" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action…." Fed. R. Civ. P. 26(b)(2)(C). Where discovery is

-9-

sought through non-party subpoenas, the Court must consider whether the information sought is "available from any other source." *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 U.S. Dist. LEXIS 152073, *6 (S.D.N.Y. Sept. 6, 2019) (holding subpoena requesting "all documents" to be overbroad and unduly burdensome even though it may seek relevant information). Where the information sought can be obtained from discovery requests made to parties to the litigation rather than non-parties, discovery requests made to non-parties should be limited. *Id.*

In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)(because "plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court finds that, at this time, requiring [the] non-party … to produce these documents is an undue burden"); *Insituform Technologies v. Cat Contracting*, 914 F.Supp. 286, 287 (N.D. Ill. 1996) (holding a party should not be permitted to seek information from a non-party that they can obtain from the opposing party); *Davis v. Ramen*, 2010 WL 1948560, at *1, 2010 U.S. Dist. LEXIS 115432, at *3 (E.D.Cal. May 11, 2010)(denying a request for a subpoena *duces tecum* because the plaintiff had not demonstrated that the records were only obtainable through the non-party).

Here, Pandora's discovery requests at issue are both irrelevant and overbroad, as they seek "<u>all</u> documents" regarding topics entirely unrelated to either Plaintiffs or the Asserted Works at issue in the Consolidated Litigation. To the extent the requests can be appropriately limited to any information specifically related to Plaintiffs or the Asserted Works, that information is more appropriately sought from the Plaintiffs in the Consolidated Action, rather than non-party SG.

In evaluating whether a subpoena is unduly burdensome, "the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F.Supp.2d 332, 354 (D.D.C. 2011); see also *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (providing a court may quash a subpoena if the burden on the third-party

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

1  outweighs the likely benefit of the subpoena, "at least in the absence of a convincing showing

2  that the subpoena is likely to yield unique and material evidence from the third party.")

3      A third-party subpoena issued pursuant to FRCP 45 also is subject to the limitations of

4  FRCP 26. See *Nidec Corp.*, 249 F.R.D. at 577; *In Re Subpoena of DJO, LLC*, 295 F.R.D. 494,

5  497 (S.D. Cal. 2014). The court is required to limit the "extent of discovery otherwise allowed"

6  if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some

7  other source that is more convenient, less burdensome, or less expensive," or the "burden or

8  expense of the proposed discovery outweighs its likely benefit, considering the needs of the case,

9  the amount in controversy, the parties' resources, the importance of the issues at stake in the

10  action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

11  Furthermore, courts have been "inclined to limit the scope of discovery directed to non-parties in

12  order to protect the non-party from harassment, inconvenience, or disclosure of confidential

13  documents." *Wahoo Intern. Inc. v. Phix Doctor, Inc.*, 2014 WL 3573400 (S.D. Cal. July 18,

14  2014) (citing *Royal Surplus Lines Ins. Co. v. Sofamor Danek Group*, 190 F.R.D. 463, 467 (W.D.

15  Tenn. 1999)). Finally, whether the information requested is necessary will be more strictly

16  construed for non-parties. *See W. Palm Beach Acquisitions, Inc. v. KIA Motors Am., Inc.*, 2021

17  U.S. Dist. LEXIS 241609, *19-20 (C.D. Cal. 2021).

18      **IV.  ARGUMENT**

19      Pandora's motion to compel should be denied for several reasons. First, the requested

20  documents are not relevant to any of Plaintiffs' claims or Pandora's alleged defenses. Although

21  Pandora purports to seek documents relevant to its copyright misuse affirmative defense, that

22  defense relates to Plaintiffs' actions. That is, assuming *arguendo* that Plaintiffs have misused

23  their copyrights, it is Plaintiffs' actions that would result in such a finding, not the actions of

24  non-parties. Instead, Pandora's non-party subpoena to SG is a thinly veiled attempt to resurrect

25  the antitrust claims that have already been dismissed with prejudice.

26      **A. Pandora's Requests are Unduly Broad and Burdensome**

27      Of the 28 separate requests for production in Pandora subpoena, 25 begin "All

28  Documents…," and a further two requests begin "A complete list." Included among the

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

1   categories of documents for which Pandora demands SG produce *all* documents are (i) all

2   communications SG has had with any comedian (Request No. 5), including (1) all documents

3   regarding any strategies SG may have had with respect to identifying which comedians to

4   approach for potential affiliation (Request No. 22), (2) all documents relating to solicitation of

5   comedians to become members of SG, whether the comedian joined or not (Request No. 25), (3)

6   all affiliations agreements with comedian-members of SG (Request No. 8), and (4) all documents

7   related to comedians who terminated their affiliation with SG (Request No. 9); (ii) all marketing

8   materials, *including all drafts* (Request Nos. 15 and 19), (iii) all communications with any

9   potential investor, *including all drafts* (Request No. 15), (iv) all documents regarding SG's

10   business strategy, *including all drafts* (Request No 19), and (v) all documents about any entity

11   that streams comedy recordings (Request No. 3). In addition, Pandora seeks SG's historic and

12   forecasted revenue (Request No. 17), its licensing practices (Request No. 18), and the potential

13   licensing practices of any comedian (Request No. 11). On their face, none of these requests have

14   any relevance to whether Pandora infringed Plaintiffs' copyrights or whether Plaintiffs' misused

15   their copyrights. These requests seek confidential business information with no explanation of

16   how or why the documents are related to Pandora's claims in the underlying litigation. SG has

17   legitimate concerns the information sought could be used to harm the company's business

18   practices.

19        The overbreadth and burdensome nature of Pandora's requests are obvious when one

20   considers that SG has 300 literary work clients and corresponds with an even greater number of

21   unaffiliated comedians, including those who are not and may never be clients of SG. Of those

22   comedians, only seven are Plaintiffs in Consolidated Action and only one of them (Lewis Black)

23   was affiliated with SG—and he is no longer a SG member. Pandora appears to believe that the

24   fact that one Plaintiff was a member of SG at one time justifies their investigation into all SG's

25   communications with any comedian on any topic, regardless of whether or not it has anything to

26   do with comedy licensing at all, much less the Consolidated Litigation in question. (*See e.g.*,

27   Request for Production No. 5). Such facially overbroad requests are inappropriate in any

28

-12-

1    discovery, but particularly in non-party discovery. *Alcon Vision, LLC v. Allied Vision Grp., Inc.*,

2    2019 U.S. Dist. LEXIS 152073, 2019 WL 4242040, *6 (S.D.N.Y. Sept. 6, 2019).

3         While licensing revenue can be relevant to the determination of damages for copyright

4    infringement, such information is relevant only when it relates to the parties' licensing revenue,

5    not an unrelated non-party. In no way is the overall financial information of a non-party,

6    regardless of that financial information's relationship to licensing revenue generally, or even its

7    relationship to the licensing revenue related to Plaintiffs specifically. Indeed, the cases Pandora

8    cites fail to support its argument, as they permit discovery only into the licensing revenue of

9    *parties* to the litigation.

10        To the extent that these document requests could include potentially relevant information,

11   they are, as written, facially overbroad and overly burdensome. They seek "all documents"

12   concerning a wide range of topics that are not tied in any way to Plaintiffs, the Asserted Works,

13   or the claims and defenses at issue.

14        Further, even should this Court limit these requests to pertain to the claims and defenses

15   at issue in this case, that limitation would make it inappropriate for this discovery to be sought

16   from non-party SG, as information regarding SG's relationships with Plaintiff comedians and

17   licensing of their works is similarly within the possession and control of Plaintiffs, and therefore

18   more appropriately sought from them rather than non-party SG.

19   **B. SG Has No Documents Relevant to Pandora's Copyright Misuse Defense**

20        "Copyright misuse is a judicially crafted affirmative defense to copyright infringement [.

21   . .]" *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011). The "purpose of the

22   defense" is to "prevent[] **holders of copyrights** from leveraging their limited monopoly to allow

23   them control of areas outside the monopoly." *Apple*, 658 F.3d at 1157 (internal quotation marks

24   and citation omitted) (emphasis added). "[T]here must exist a nexus between the **copyright**

25   **holder's actions** and the public policy embedded in the grant of a copyright." *Shloss v. Sweeney*,

26   515 F. Supp. 2d 1068, 1080 (N.D. Cal. 2007) (emphasis added). Copyright misuse "is often

27   applied when a defendant can prove either: (1) a violation of the antitrust laws; (2) that **the**

28   **copyright owner** otherwise illegally extended its monopoly; or (3) that **the copyright owner**

-13-

violated the public policies underlying the copyright laws." *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 700 (9th Cir. 2015) (emphasis added). *See also* "Misuse often exists where the patent or **copyright holder has engaged** in some form of anti-competitive behavior." *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 342 F.3d 191, 204 (3d Cir. 2003)" (emphasis added).

It is a simple fact that the claims remaining at issue in the Consolidation Litigation – and Pandora's affirmative defenses – relate only to Pandora's alleged infringement of Plaintiff comedians' copyrights in their underlying literary works, and Plaintiffs' alleged misuse of their copyrights in bringing the Consolidated Litigation. It is the behavior of Pandora and the Plaintiffs alone that is at issue. The documents targeted by Pandora's requests, which essentially amount to requests for SG' *entire* business strategy, business model, communications with all clients or potential clients, marketing and investor materials, and financial information, have no bearing whatsoever on either Pandora's infringing behavior, or the Plaintiffs' right to enforce their copyrights. To imply otherwise is simply absurd.

SG does not own the copyrights to any of the Asserted Works (or any works, for that matter). Therefore, SG can have no role in any alleged copyright misuse, which by definition must be misuse *by the copyright owner*.  Indeed, in ruling on a previous Motion to Compel filed by Pandora against the Plaintiffs, Magistrate Judge Rocconi found Pandora's argument about the relevance of SG's behavior to Pandora's claims that Plaintiffs have engaged in copyright misuse to be "unpersuasive." (Consolidated Litigation, ECF No. 193 at 7) (granting Pandora's motion to compel discovery from Plaintiffs on other grounds).

As noted above, this defense relies on the Plaintiffs' actions, not the actions of a non-party such as SG. The actions of non-parties cannot sustain a copyright misuse or unclean hands defense. Further, the mere filing of an infringement action does not constitute copyright misuse. *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 16-CV-1318(GBD)(BCM), 2018 U.S. Dist. LEXIS 106727, *4 (S.D.N.Y. April 25, 2018). Even a collective action in the form of filing a "collective litigation" against alleged infringers does not constitute copyright misuse. *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 458-59 (E.D.N.Y. 2007); *Basic Books,*

-14-

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

*Inc. v. Kinko's Graphics Corp.,* 758 F. Supp. 1522, 1538-39 (S.D.N.Y. 1991). Courts have indeed refused to compel discovery in similar situations, denying motions to compel where the defendant has alleged Plaintiffs are pursuing litigation as a proxy for a non-party. *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC,* 2018 U.S. Dist. LEXIS 106727, *4 (S.D.N.Y. April 25, 2018). There, as here, information about what specifically spurred Plaintiff to enforce its copyrights is not relevant to, and does not serve to provide evidence of, defendant's copyright misuse or unclean hands defenses. Where discovery regarding strategies and policies related to copyright licensing as a potential basis for copyright misuse defenses *has* been allowed, that discovery has been directed at and limited to the activities of plaintiffs in those cases, not non-parties. *Wixen Music Publ'g, Inc. v. Triller, Inc.*, 2022 WL 3636000, at *2 (C.D. Cal. Aug. 1, 2022).

None of the cases cited by Pandora support pursuing discovery of a non-party; i.e., in every case cited, the owner of the intellectual property allegedly misused is a party to that litigation. For example, in *M. Witmark & Sons v. Jenson,* 80 F. Supp. 843 (D. Minn. 1948), the plaintiffs were the owners of the copyrighted musical works the defendants had allegedly infringed. 80 F. Supp. 843 (D. Minn. 1948). In addition, all of the plaintiffs were members of the American Society of Composers, Authors and Publishers, better known as ASCAP. Here, SG is not a party to the Consolidated Litigation and none of the Plaintiffs are members of SG.

Moreover, defendants in *Witmark* accused plaintiffs of both copyright misuse, which the court described as "extending their copyright monopoly in contravention of the copyright law," and violating antitrust law. *Id.* at 849. The *Witmark* court found that plaintiffs and ASCAP "fix prices and completely control competition and thereby restrained trade in violation of Section 1 of the Sherman Anti-Trust Act…" *Id.* Here, the Court has twice dismissed Pandora's antitrust claims against SG, the second time with prejudice. (Consolidated Litigation, ECF 164)

**C. Pandora's Motion Is a Continuation of Its Scorched Earth Litigation Tactics Designed to Punish Comedians for Asserting Their Rights and Drive SG Out of Business**

As noted above, Pandora filed meritless antitrust counterclaims against SG not once, but twice. After Pandora's initial counterclaims were dismissed, Pandora failed to heed the warning

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

of the Court and filed amended (though nearly identical) counterclaims. This time, Pandora's counterclaims were dismissed with prejudice. Because Pandora insisted on pursuing its meritless amended counterclaims, SG filed a Rule 11 motion for sanctions. (Consolidated Litigation, ECF 128), in which SG noted Pandora's true purpose in bringing its amended counterclaims was to "harass Spoken Giants and drive up the cost of litigation, making it impossible or impracticable for the affiliates of Spoken Giants—in particular its less high-profile affiliates—to vindicate their rights." (*Id.* at 18). As SG noted in its reply, "SG faces enormous legal fees and other expenses— not counting the disruption to its business and non-monetary costs—to defend itself against Pandora's frivolous claims." (Consolidated Litigation, ECF 150 at 9). Pandora's Motion and its facially overbroad and unduly burdensome requests for "all documents" concerning nearly all of SG's business operations is merely the continuation of Pandora's war of attrition designed to prevent comedians from receiving the royalties to which Pandora has publicly admitted in SEC filings are due and to drive SG out of business.

**D. If the Court Compels Non-Party SG to Produce Documents, Then Pandora Must Pay for SG's Significant Expenses**

For the reasons stated above, Pandora's Motion should be denied. If, however, the Court does decide that SG should produce documents, then Pandora must be required to pay for the significant expenses incurred by SG in production. "Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant. The plain language of the rule dictates our conclusion. The rule states the district court's order compelling compliance with a subpoena " *must* protect a person who is neither a party nor a party's officer from significant expense resulting from compliance," Fed.R.Civ.P. 45(d)(2)(B)(ii) (emphasis added), and provides no exceptions. This language leaves no room for doubt that the rule is mandatory. Thus, when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party. If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder "non-significant." *See Linder v. Calero-Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001); *Legal*

*Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). If SG is required to collect documents, review them for relevance and privilege, and produce relevant non-privileged documents to Pandora, SG will incur significant costs. This is especially true here, where Pandora is asking SG produce essentially every document and/or communication it has ever created.

"Courts should consider the ability of the producing non-party to bear the costs of production. The Ninth Circuit endorsed the D.C. Circuit's analysis in *Linder,* which, in turn, noted that 'a court might take into account the financial ability of the non-party to bear some costs,' 251 F.3d at 182." *United States v. McGraw-Hill Cos.*, Case No.: CV 13-0779-DOC (JCGx), 302 F.R.D. 532, at *6 (C.D. Cal. Aug. 1, 2014). SG should not bear the burden of cost when it is a non-party to the litigation and lacks the financial resources to cover the expenses associated with producing documents responsive to Pandora's subpoena.

**V.    CONCLUSION**

For the foregoing reasons, SG respectfully requests that this Court deny Pandora's request for SG to search for and produce documents in response to these Requests.

Respectfully submitted,

Dated: November 9, 2023                    GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ John P. Cogger*
       John P. Cogger
       Joshua D. Wilson (Pro Hac Vice to be filed)
       Attorneys for Respondent
       SPOKEN GIANTS, LLC

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd Floor,
Los Angeles, CA 90071

-17-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PANDORA'S MOTION
TO COMPEL SG, LLC TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2023, a true and correct copy of the foregoing SG, LLC's Memorandum of Law in Opposition to Pandora's Motion to Compel SG, LLC to Comply with Pandora's Third-Party Subpoena, was filed electronically with the Clerk of Court using the Court's CM/ECF electronic filing system which automatically generates a Notice of Electronic Filing ("NEF") at the time said document is filed to all CM/ECF Users and counsel of record who have appeared in this case. Service with this NEF constitutes service pursuant to Federal Rule of Civil Procedure 5(b)(E). I further certify that I will cause a copy of the same to be served on Pandora Media, LLC at the following address:

Raymond J. DiCamillo, Esq.
Katharine L. Mowery, Esq.
Nathalie A. Freeman, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
(302) 651-7700
dicamillo@rlf.com
mowery@rlf.com
freeman@rlf.com

OF COUNSEL:
Paul M. Fakler
Jacob B. Ebin
Allison Aviki
Mayer Brown, LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 506-2500
pfakler@mayerbrown.com
jebin@mayerbrown.com
aaviki@mayerbrown.com

*Attorneys for Petitioner Pandora Media, LLC*

　　　　　__/s/ John P. Cogger_____
　　　　　　　John P. Cogger

*Gordon Rees Scully Mansukhani, LLP*
*633 West Fifth Street, 52nd Floor,*
*Los Angeles, CA 90071*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PANDORA'S MOTION TO COMPEL SG, LLC TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA